**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES,<br>    *Plaintiff*,<br><br>         v.<br><br>CLEMENTE HOLMES,<br>    *Defendant*. | No. 3:19-cr-87 (VAB) |

**RULING AND ORDER ON MOTION FOR COMPASSIONATE RELEASE**

Clemente Jones ("Defendant") has moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Mots. for Compassionate Release, ECF Nos. 57 & 58 (May 27, 2020) ("Def.'s Mot."); *see also* Mem. in Supp., ECF No. 61-1 (May 27, 2020) ("Def.'s Mem."). The Government opposes his motion. Mem. in Opp'n to Mot. for Compassionate Release, ECF No. 61 (June 2, 2020) ("Gov't Opp'n").

For the reasons set forth below, the Court **GRANTS** Mr. Holmes's motions for compassionate release. Mr. Holmes's term of imprisonment is reduced to **TIME SERVED;** he shall be released from Bureau of Prisons ("BOP") custody immediately, and his term of supervised release shall begin on home incarceration until November 8, 2020, to be monitored as determined best by the U.S. Probation Office. All other conditions of supervised release from his December 30, 2019 judgment shall remain in effect.

I. **BACKGROUND**

On September 3, 2019, Mr. Holmes pled guilty to a four-count indictment charging him with violations of 18 U.S.C. §§ 922(g)(1), 924(a)(2), 924(c)(1)(A)(i), and 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Plea Agreement, ECF No. 37 at 1–2 (Sept. 3, 2019).[1]

On December 30, 2019, the Court sentenced Mr. Holmes to twelve months imprisonment for Counts One and Two, to be served concurrently; and twelve months on Count Three, to be served consecutively to Counts One and Two, for a total term of twenty-four months imprisonment. J., ECF No. 51 (Dec. 30, 2019). The Court also ordered him to serve a three-year term of supervised release and pay a $300.00 special assessment. *Id.* Count Four was dismissed upon the Government's oral motion. *Id.*

On May 27, 2020, Mr. Holmes moved for compassionate release due to his health issues and in light of the COVID-19 pandemic. Def.'s Mem. at 1.

On June 2, 2020, the Government filed its response. Gov't Opp'n.

On June 3, 2020, the Court heard oral argument by telephonic conference. Minute Entry, ECF No. 63 (June 3, 2020).

II. **STANDARD OF REVIEW**

A court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons;" or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti*, No. 02 CR 743-07 (CM),

---

[1] He also agreed to forfeit his interest in the firearm SCCY Industries CPX 9mm handgun, bearing serial number 479399, and all related ammunition seized with this firearm. Plea Agreement at 3.

2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020) ("In December 2018, as part of the First Step Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days[.]").

In determining whether to grant a motion to modify a sentence, a court must consider the factors set forth in 18 U.S.C. § 3553(a). A court may only grant such a modification if it finds that "extraordinary and compelling reasons warrant" a modification, or that

> the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community.

*Id.* A court must also find that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

### III.   DISCUSSION

The U.S. Sentencing Guidelines (U.S.S.G) § 1B1.13 states in part:

> [T]he court may reduce the term of imprisonment if . . . the court determines that [e]xtraordinary and compelling reasons warrant the reduction; . . . [t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and [t]he reduction is consistent with this policy statement.

*United States v. Lisi*, No. 15 CR. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) (quoting U.S.S.G. § 1B1.13(1)(A), (2), and (3)). While there exists a dispute among district courts as to whether a court must still defer to the BOP's determination of what qualifies as an "extraordinary and compelling reason" to modify a sentence, a majority of district courts,

including in this District, have found that courts may make that determination independently. *See*, *e.g.*, *United States v. Rivernider*, No. 3:10-cr-222 (RNC), 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020) (collecting cases); *Lisi*, 2020 WL 881994, at *3 (collecting cases). Yet, U.S.S.G. "§ 1B1.13's descriptions of 'extraordinary and compelling reasons' remain current," *United States v. Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020), and "[t]he standards for considering the motion remain helpful as guidance to courts which hear these motions without the BOP as an intermediary," *United States v. Zullo*, No. 09 Cr. 0064-02 (GWC), 2019 WL 7562406, at *3 (D. Vt. Sept. 23, 2019).

Mr. Holmes requests that the Court grant his motion for compassionate release by reducing his sentence of incarceration. Def.'s Mem. at 1. He argues that the coronavirus pandemic coupled with his asthma is "an extraordinary circumstance[]" warranting release. *Id.* He has served "nearly 15 months of his 24-month period of incarceration which will be followed by a 3-year term of supervised release." *Id.* On April 20, 2020, through counsel, Mr. Holmes submitted a request for release, which was denied by the Warden on April 21, 2020. *Id.* He is currently incarcerated at MDC Brooklyn. *Id.* at 2.

The Government opposes Mr. Brickhouse's motion. The Government notes that "MDC Brooklyn has no active COVID-19 cases among inmates and six active cases among staff." Gov't Opp'n at 1. The Government "defers to the Court regarding whether [Mr.] Holmes has demonstrated 'extraordinary and compelling' reasons for a sentencing reduction" and urges the Court to "consider that the underlying offense conduct involved [Mr.] Holmes's possession of a firearm and distribution quantities of fentanyl, heroin, and cocaine base." *Id.* Should the Court grant Mr. Holmes's motion, the Government asks that Mr. Holmes's conditions of supervised release be modified "to require a period of home incarceration until November 8, 2020." *Id.*

### 1. Extraordinary and Compelling Reasons

Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions in combination with the increased risks of COVID-19 in prisons constitute "extraordinary and compelling reasons" warranting relief. *See, e.g.*, *United States v. Daugerdas*, 09CR581, 2020 WL 2097653, at *3 (S.D.N.Y. May 1, 2020) (defendant serving a 180 month term of imprisonment and incarcerated at a facility with no reported cases of COVID-19; the district court found that his underlying health conditions—Type 2 diabetes, obesity, hypertension, and high cholesterol—and the risk of COVID-19 in prisons generally constituted an extraordinary and compelling reason, but did not ultimately grant compassionate release); *United States v. Morales*, No. 3:19-cr-121 (KAD), 2020 WL 2097630, at *3 (D. Conn. May 1, 2020) (recognizing district courts have found that "[a]sthma is a condition that places a person at increased risk for serious complications, or even death, if the person contracts COVID-19[,]" and creates a[n] extraordinary and compelling reason for sentence reduction"); *United States v. McCarthy*, No. 3:17-cr-0230 (JCH), 2020 WL 1698732, *5 (D. Conn. Apr. 8, 2020) ("[Mr.] McCarthy is 65 years old and suffers from COPD, asthma, and other lung-related ailments . . . . The defendant's age and medical condition, taken in concert with the COVID-19 public health crisis, constitute an extraordinary and compelling reason to reduce [Mr.] McCarthy's sentence."); *United States v. Zukerman*, 16 CR. 194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) ("Zukerman's age, combined with diabetes, hypertension, and obesity, satisfy" the requirement of an extraordinary and compelling reason to modify his sentence).

Mr. Holmes's asthma places "him at greater risk from coronavirus." Def.'s Mem. at 5 (citations omitted). He argues further that "the Court's authority to reduce Mr. Holmes's

sentence is not only consistent with the statute, but also with the language in the policy statement, which makes clear that '[t]he court is in a unique position to determine whether the circumstances warrant a reduction . . . .'" *Id.* at 10. "[T]he risk to Mr. Holmes if he contracts the virus is significant and changes the analysis of whether the remainder of the term in prison is warranted." *Id.* at 11.

The Government agrees that asthma "is a risk factor for adverse outcomes related to COVID-19," Gov't Opp'n at 6–7, but notes that "MDC Brooklyn has no active cases of COVID-19 among inmates and six active cases among staff," *id.* at 7.

Both Congress and the Attorney General have recognized the emergency presented to the Bureau of Prisons by COVID 19. In passing the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Congress provided that "if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement. . . ." CARES Act § 12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). Attorney General William Barr subsequently made a "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons." *United States v. Sawicz*, No. 08-cr-287 (ARR), 2020 WL 1815851, at *1 (E.D.N.Y. Apr. 10, 2020) (citing a memorandum for the Director of BOP). "In particular, the Attorney General acknowledged the 'significant levels of infection' at FCI Danbury and instructed the Bureau to 'move with dispatch . . . to move vulnerable inmates out of [this] institution[ ].'" *Id.*

As of June 3, 2020, MDC Brooklyn has zero confirmed active cases among inmates and six active confirmed cases of coronavirus among staff. *See COVID-19, Coronavirus*, BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited June 3, 2020).

Accordingly, the Court finds extraordinary and compelling reasons exist.

### 2. Exhaustion

Normally, under 18 U.S.C. § 3582(c)(1)(A), a court may not modify or reduce a defendant's sentence on that defendant's motion when the defendant has not exhausted his administrative remedies by either (1) appealing a failure of the BOP to bring such a motion on the defendant's behalf or (2) the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility. Mr. Holmes's counsel represents that Mr. Holmes requested and was denied compassionate release from the Warden at MDC Brooklyn. Def.'s Mem. at 1. The Government does not dispute that Mr. Holmes has exhausted his administrative remedies. Gov't Opp'n at 5.

Accordingly, the exhaustion requirement has been met.

### 3. Section 3553(a) Factors

After establishing that extraordinary and compelling reasons exist, Section 1B1.13 of the Guidelines "further provides that a court may reduce a term of imprisonment only if the court determines that '[t]he defendant is not a danger to the safety of any other person or to the community[,]'" and after considering the factors listed in 18 U.S.C. 3553(a). *McCarthy*, 2020 WL 1698732 at *5.

A sentence of time served would reduce Mr. Holmes's sentence only minimally, while release from prison and a subsequent violation of supervised release "would expose Mr. Holmes to a further prison term of up to 24 months, which effectively would reinstitute the balance of the time reduction that a time-served sentence would cause." Def.'s Mem. at 13. With good time credit, Mr. Holmes likely would be released on November 8, 2020. *Id.* at 2. Moreover, because of the pandemic, "[a]ny ability to participate in programming reportedly is extremely limited if

not non-existen[t,]" and any need for medical care is outweighed by the present risks of COVID-19. *Id.* at 14. Lastly, Mr. Holmes "has the support of his fiancé to help him transition back to the community." *Id.* at 1.

The Government contends that Mr. Holmes "has a rather extensive criminal history that includes two narcotics offenses and a firearm offense." Gov't Opp'n at 8. In its view, through his dangerous conduct, Mr. Holmes has "demonstrated a pattern of disrespect for the law, and [that] weighs against granting [the] motion." *Id.* at 8–9.

The Court disagrees.

Although his criminal history suggests that there is no guarantee that Mr. Holmes will no longer be a danger to any other person or the community, the Court finds that the support Mr. Holmes will have upon his release and the possible reinstatement of a twenty-four month term of incarceration for a violation of conditions of supervised release, coupled with the threat of the coronavirus, provides a sufficient basis to support Mr. Holmes's release.

Accordingly, having considered all of these factors as well as those set forth in 18 U.S.C. § 3553(a), the Court concludes that they weigh in favor of immediate release.

## IV. CONCLUSION

For the reasons explained above, the Court **GRANTS** the motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Mr. Holmes's term of imprisonment is reduced to **TIME SERVED**.

It is **ORDERED** that Mr. Holmes be released immediately to begin his three-year term of supervised release, and this term of supervised release shall be served on home incarceration until **November 8, 2020**, to be monitored as determined best by the U.S. Probation Office.

Within fourteen (14) days of release, Mr. Holmes also shall contact the U.S. Probation Office for evaluation and possible inclusion in one of the District Court of Connecticut's reentry or support court programs. All other conditions of supervised release from his December 30, 2019 judgment shall remain in effect.

Upon returning to his home, Mr. Holmes shall self-quarantine for fourteen (14) days. He must also contact his physician to determine whether he is a candidate for testing for COVID-19. If his medical provider determines that he needs to be tested, he must comply with that testing. If the test is positive, he shall promptly report the result to the Bureau of Prisons.

**SO ORDERED** at Bridgeport, Connecticut, this 3rd day of June, 2020.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge